**UNITED STATES, Appellant,**

v.

**Earl S. WALLACE, Appellee.**

No. 5882.

District of Columbia Court of Appeals.

Argued Sept. 20, 1971.

Decided Nov. 1, 1971.

Leonard W. Belter, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S.

Atty., John A. Terry and John T. Kotelly, Asst. U. S. Attys., were on the brief, for appellant.

William J. Garber, Washington, D. C., appointed by this court, for appellee.

Before HOOD, Chief Judge, and KERN and REILLY, Associate Judges.

REILLY, Associate Judge:

Appellee was charged by indictment with stealing property of the District of Columbia,[1] receiving property stolen from the District,[2] petit larceny,[3] and receiving stolen goods.[4] The case is here on appeal from an order suppressing as evidence, a typewriter, the only item of property referred to in the indictment.

The court below granted the motion to suppress, relying on two recent decisions of this court, viz., Daugherty v. United States, D.C.App., 272 A.2d 675 (1971), and Campbell v. United States, D.C.App., 273 A.2d 252 (1971). After reviewing the evidence produced at the pretrial hearing on the motion, we find this reliance misplaced and reverse the order.

The only witness called at this hearing was the arresting officer, David Butler. He testified substantially as follows:

Butler and another uniformed police officer entered a pawnshop on a routine check. Butler observed a typewriter on the counter. He was informed by the pawnbroker that the machine had just been brought into the shop. The pawnbroker also said that when he noticed that the typewriter bore a sticker indicating that it belonged to the Department of Public Health, he advised the customer—presumably as a condition for making an advance—that he would have to take fingerprints. Whereupon the customer said that he would have to go out, but that he would return shortly. The policemen decided to wait.

1. D.C.Code 1967, § 22–2206.

2. Id., § 22–2207.

3. Id., § 22–2202.

4. Id., § 22–2205.

Some minutes later, Wallace, the appellee, entered and was identified by the shopkeeper as the man who brought in the typewriter. Butler asked Wallace where he got the typewriter and Wallace said it came from a friend. After further questions by the officer, Butler told Wallace he would have to take him to the precinct for additional investigation. At the station Butler, who had also brought the typewriter with him, ascertained for the first time that this machine had in fact been stolen. Wallace was then booked for receiving stolen property.

On examination by the Government, Butler testified that it was the sticker which led him to believe that the typewriter had been stolen from the District of Columbia government, as he assumed the agency would have removed the seal if it wished to sell or give away the item. When asked by the court whether he had any prior experience with this sort of property and whether he knew how the District disposed of obsolete property, Butler answered in the negative.

The motions judge ruled that Wallace had actually been arrested in the pawnshop and held that under the doctrine of the *Daugherty* and *Campbell* opinions, no probable cause for arrest existed at that time. Accordingly, he granted the motion to suppress.

Before reaching the conclusion that the issue upon which he was called upon to rule was controlled by our decisions in *Daugherty* and *Campbell, supra,* the motions judge did observe that except for "that little sign" (*i.e.,* the Department of Health sticker) the situation was on "all fours" with those two cases. In our opinion, however, the 'little sign" amounted to a crucial difference, for it proclaimed that the typewriter was the property of a third party. It is true that there is substantial resemblance between the circumstances of the arrest and seizure here and those mentioned by this court in the cited cases. Both cases dealt with police officers halting men carrying television sets on the street, subjecting them to interrogation, and resorting to arrest in one instance and seizure of the set in another, after receiving implausible explanations. At the time —and this was the situation here—the officers had received no reports to indicate a theft of the property in question, and we held that probable cause for arrest and seizure was lacking. But had there been labels, tags, or stickers on those particular television sets stating that the sets were owned by some person for whom the possessors did not profess to be acting, we could scarcely have characterized as improbable an arresting officer's inference that the items were stolen.

In our view, the arresting officer's ignorance of the actual practice of the Department of Health in disposing of surplus typewriters was irrelevant, for the only question presented to the court by the suppression motion was whether it was reasonable for the officer to conclude that the sticker meant what it said.[5] We hold that it was.

Reversed.

---

5. Brooks v. United States, D.C.Mun.App., 159 A.2d 876 (1960), (store tags of retailer on record player); Hiet v. United States, 125 U.S.App.D.C. 338, 372 F.2d 911 (1967), (bags inside automobile inscribed "U. S. Mail"); United States v. Thomas, 396 F.2d 310 (2d Cir., 1968), (visible markings on cartons of chinaware).